# EXHIBIT 12

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7617**

WRITER'S EMAIL ADDRESS
**danielkoffmann@quinnemanuel.com**

June 30, 2023

**VIA ELECTRONIC MAIL**

Reenah Kim
Anne Collesano
Erik Jones
Bureau of Consumer Protection
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
rkim1@ftc.gov
DEbrief@ftc.gov

Re: *In the Matter of Twitter, Inc.*, **FTC File No. 202-3062**

Dear Counsel:

We write on behalf of X Corp. regarding the investigation you are conducting into X Corp., Elon Musk, and potentially others. Documents and testimony that came to light during the deposition of David Roque raise serious concerns about the manner in which the Commission is conducting this investigation. Among other things, Mr. Roque testified that the FTC's conduct made him "fe[el] as if the FTC was trying to influence the outcome of the engagement before it had started." Roque Dep. Tr. 120:20–22 (June 21, 2022). Specifically, "[i]n some of the discussions that we were having with the FTC, expectations were being conveyed about what those results should be before we had even begun any procedures." *Id.* at 122:3–10.

"[T]he way the conversations with the FTC were transpiring" was so startling and unusual that Mr. Roque worried that the FTC posed "an adverse threat [to Ernst & Young]," meaning that the FTC constituted "somebody outside of the arrangement [Ernst & Young] had with Twitter trying to influence the outcome of [Ernst & Young's] results." *Id.* at 120:22–121:2. Even when Ms. Collesano attempted to lead Mr. Roque to confirm that "no one from the FTC directed you to reach a particular conclusion about Twitter's program," he explained that, to the contrary, "[t]here w[ere] suggestions of what they would expect the outcome to be." *Id.* at 122:20–24.

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Mr. Roque left no ambiguity about what "outcome" he perceived the FTC was attempting to "influence" Ernst & Young to reach: that Ernst & Young "would conclude that there were deficiencies in Twitter's privacy and information security program." *Id.* at 120:20–22, 200:19–201:3.

Mr. Roque also testified about efforts by the Commission to bully Ernst & Young into issuing a report that would be damaging to Twitter. For example, he testified that Commission staff communicated to him "that Ernst & Young, under all circumstances, will be conducting and issuing a report on behalf of the FTC order. So it was sort of like it was very adamant about this is absolutely what you will do and this is going to occur, and you'll produce a report at the end of the day." *Id.* at 200:2–8.

Mr. Roque testified that Reenah Kim and a man Mr. Roque perceived to be Ms. Kim's supervisor made the statements described above. *Id.* at 197:16–198:17. We understand that Mr. Roque was referring to James Kohm, Associate Director of the Enforcement Division.

Mr. Roque's contemporaneous communications—which neither you nor Ernst & Young produced to X Corp. prior to the deposition—corroborate his testimony. For example, Mr. Roque and his Ernst & Young colleagues were concerned that, by "pressuring [Ernst & Young] to reach a specific outcome," the FTC's conduct had created an "[u]ndue influence threat" that interfered with Ernst & Young's "ab[ility] to be objective." EY_FTC_0002778; *see also* EY_FTC_0006979 (discussing how the FTC's conduct jeopardized Ernst & Young's ability to "act with objectivity"). Other internal Ernst & Young communications show that Mr. Roque perceived a risk that, if Ernst & Young resigned as Twitter's independent assessor, "[t]he FTC [would] take[] exception to our withdrawal and create[] 'other' challenges for EY over time." EY_FTC_0002730.

This evidence is alarming. It demonstrates that the FTC has resorted to bullying tactics, intimidation, and threats to potential witnesses. It strongly suggests that the FTC has attempted to exert improper influence over witnesses in order to manufacture evidence damaging to X Corp. and Mr. Musk. And it raises a serious question about whether the FTC is so biased against X Corp. and Mr. Musk that its continued investigation, any effort to enforce the May 2022 Consent Order, and any future enforcement action would be unconstitutional. In order to evaluate the nature and scope of the FTC's misconduct and the remedial measures that will be necessary, we ask that you provide the following documents and information:

1. All communications, between May 26, 2022 and the date of this letter, between (a) any commissioner, attorney, investigator, employee, agent, representative, or other person retained by or working on behalf of the FTC (collectively, "FTC Personnel"); and (b) any partner, associate, shareholder, officer, director, employee, agent, internal or external legal counsel, representative, or other person retained by or working on behalf of (collectively, "Representative") Ernst & Young LLP or any parent, subsidiary, or affiliate of Ernst & Young LLP (collectively, "Ernst & Young"), that concerns, references, or relates in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; (iv) the May 26, 2022, Decision and Order in *In the Matter of Twitter, Inc.*, Docket No. C-4316 ("2022 Consent Order"); (v) the March 2, 2023 subpoena that the FTC issued to Ernst & Young LLP in *United*

   *States v. Twitter, Inc.*, 3:22 Civ. 3070 (TSH) (N.D. Cal.) (the "Ernst & Young Subpoena"); or (vi) the FTC's decision to approve or not approve Ernst & Young in other engagements not related to the 2022 Consent Order.

2. All communications between (a) any FTC Personnel; and (b) any Representative of FTI Consulting or any parent, subsidiary, or affiliate of FTI Consulting (collectively, "FTI"), that concerns, references, or relates in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order.

3. All communications between (a) any FTC Personnel; and (b) any Representative of Protiviti Inc. or any parent, subsidiary, or affiliate of Protiviti Inc. (collectively, "Protiviti"), that concerns, references, or relates in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order.

4. A complete list of every phone call, videoconference, meeting, or other conference, between May 26, 2022 and the date of this letter, between (a) any FTC Personnel; and (b) any Ernst & Young Representative, that concerned, referenced, or related in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; (iv) the 2022 Consent Order; (v) the Ernst & Young Subpoena; or (vi) the FTC's decision to approve or not approve Ernst & Young in other engagements not related to the 2022 Consent Order.  For each such phone call, videoconference, meeting, or other conference, provide the date, a complete list of every FTC Personnel who attended, and a complete list of every Ernst & Young Representative who the FTC has reason to believe attended.

5. All notes, memoranda, communications, documents, or other records that concern, reference, or relate in any way to any phone call, videoconference, meeting, or other conference, between May 26, 2022 and the date of this letter, between (a) any FTC Personnel; and (b) any Ernst & Young Representative, that concerned, referenced, or related in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; (iv) the 2022 Consent Order; (v) the Ernst & Young Subpoena; or (vi) the FTC's decision to approve or not approve Ernst & Young in other engagements not related to the 2022 Consent Order.

6. Every document, privilege log, or other item that Ernst & Young has produced to the FTC, between May 26, 2022 and the date of this letter, in response to the Ernst & Young Subpoena, or otherwise concerning, referencing, or relating to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; (iv) the 2022 Consent Order; or (v) the FTC's decision to approve or not approve Ernst & Young in other engagements not related to the 2022 Consent Order.

7. Any other notes, memoranda, communications, documents, or other records that concern, reference, or relate in any way to Ernst & Young's service as the assessor under Part VI of the 2022 Order.

8. A complete list of every phone call, videoconference, meeting, or other conference, between May 26, 2022 and the date of this letter, between (a) any FTC Personnel; and (b) any FTI Representative, that concerned, referenced, or related in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order. For each such phone call, videoconference, meeting, or other conference, provide the date, a complete list of every FTC Personnel who attended, and a complete list of every FTI Representative who the FTC has reason to believe attended.

9. All notes, memoranda, communications, documents, or other records that concern, reference, or relate in any way to any phone call, videoconference, meeting, or other conference, between May 26, 2022 and the date of this letter, between (a) any FTC Personnel; and (b) any FTI Representative, that concerned, referenced, or related in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order.

10. Every document, privilege log, or other item that FTI has produced to the FTC, between May 26, 2022 and the date of this letter, in connection with its service as the assessor under Part VI of the 2022 Consent Order, or otherwise concerning, referencing, or relating in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order.

11. A complete list of every phone call, videoconference, meeting, or other conference, between May 26, 2022 and the date of this letter, between (a) any FTC Personnel; and (b) any Protiviti Representative, that concerned, referenced, or related in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order. For each such phone call, videoconference, meeting, or other conference, provide the date, a complete list of every FTC Personnel who attended, and a complete list of every Protiviti Representative who the FTC has reason to believe attended.

12. All notes, memoranda, communications, documents, or other records that concern, reference, or relate in any way to any phone call, videoconference, meeting, or other conference, between May 26, 2022 and the date of this letter, between (a) any FTC Personnel; and (b) any Protiviti Representative, that concerned, referenced, or related in any way to (i) Twitter, Inc.; (ii) X Corp.; (iii) Elon Musk; or (iv) the 2022 Consent Order.

13. All notes, memoranda, communications, documents, or other records that concern, reference, or relate in any way to any request from or on behalf of Elon Musk to meet with FTC Chair Lina Khan.

We ask that you provide the information listed above no later than **July 6, 2023**.

Respectfully submitted,

  /s/ Daniel R. Koffmann
Daniel R. Koffmann

cc:     Alex Spiro