**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| X CORP.<br><br>　　　　　　　　Movant,<br><br>　　v.<br><br><br>ERNST & YOUNG, LLP<br>　　　　　　　　Respondent. | No.  1:23-mc-00082-ABJ<br><br>Underlying Case, *United States v. Twitter*, pending in the United States District Court for the Northern District of California, No. 22-civ-3070 |

## ERNST & YOUNG LLP'S OPPOSITION TO X CORP.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................... 1

        A.      Resolution of the Underlying Action ................................................................. 2

        B.      EY's Role as Independent Assessor ................................................................... 3

        C.      Twitter's Post-Resolution Subpoena .................................................................. 4

III.    LEGAL STANDARD .................................................................................................... 7

IV.     ARGUMENT ................................................................................................................. 7

        A.      Twitter Identifies No Legal Basis to Seek Discovery from EY ......................... 8

                1.      Rules 45 and 26 do not authorize post-judgment discovery. .................. 8

                2.      Rule 60 does not provide an automatic right to discovery ...................... 9

        B.      Twitter's Subpoena Seeks Documents That Are Not "Relevant." ...................... 12

        C.      The Requests Are Overly Broad and Unduly Burdensome For a Non
                Party. .................................................................................................................... 14

                1.      The Subpoena is facially overbroad ........................................................ 16

                2.      The documents are available from a party to the Underlying
                        Action. ..................................................................................................... 18

                3.      Compliance with the Subpoena would impose a significant burden. ...... 21

        D.      Twitter's Requests Seek Confidential, Proprietary and Sensitive Business
                Information Belonging to EY and Other Non-Parties. ....................................... 22

        E.      The Requests Seek Privileged Documents. ......................................................... 25

        F.      Twitter Should Pay EY's Costs Associated with the Subpoena. ......................... 27

V.      CONCLUSION .............................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application of Auto-Guadeloupe Investissement S.A.*,
No. 12 MC 221, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)...............................................18

*In Matter of Application of Frates*,
No. M8-85, 1985 WL 2752 (S.D.N.Y. Sept. 25, 1985)..........................................................22

*Baker v. Gen. Motors Corp.*,
209 F.3d 1051 (8th Cir. 2000) ...............................................................................................26

*Cali. Dep't of Soc. Servs. v. Leavitt*,
523 F.3d 1025 (9th Cir. 2008) ...............................................................................................12

*Ceuric v. Tier One, LLC*,
325 F.R.D. 558 (W.D. Pa. May 17, 2018) .............................................................................20

*Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*,
110 F. Supp. 3d 37 (D.D.C. 2015) .........................................................................................15

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) .......................................................................................16, 17

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998) ..................................................................................................20

*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980) .................................................................................................25

*Dell Inc. v. DeCosta*,
233 F. Supp. 3d 1 (D.D.C. 2017) .....................................................................................15, 27

*In re Denture Cream Products Liability Litigation*,
292 F.R.D. 120, 124 (D.D.C. 2013)........................................................................................14

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*,
339 F.R.D. 334 (D.D.C. 2021)............................................................................................7, 21

*In re Diaz/Tioga Fruit Terminal, Inc.*,
No. 97-MC-21, 1997 WL 414944 (E.D. Pa. July 22, 1997)...................................................22

*Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
124 F.3d 1304 (D.C. Cir. 1997) ............................................................................................27

*Dobyns v. United States*,
    127 Fed. Cl. 63 (Ct. Fed. Cl. 2016).......................................................................10

*Educ. Fin. Council v. Oberg*,
    No. 10-mc-79, 2010 WL 3719921 (D.D.C. Mar. 8, 2010) ............................................ *passim*

*U.S. ex rel. Free v. Peters*,
    826 F. Supp. 1153 (N.D. Ill. 1993) ...............................................................9, 10, 11

*\*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
    103 F.3d 1007 (D.C. Cir. 1997)........................................................................23, 24

*Frew ex rel. Frew v. Hawkins*,
    540 U.S. 431 (2004).......................................................................................12

*\*Goldy v. Beal*,
    91 F.R.D. 451 (M.D. Pa. 1981)..........................................................................9, 10

*\*H. K. Porter Co. v. Goodyear Tire & Rubber Co.*,
    536 F.2d 1115 (6th Cir. 1976) .............................................................................10

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993)..............................................................................20

*Hecht v. Pro-Football. Inc.*,
    46 F.R.D. 605 (D.D.C. 1969)..............................................................................22

*Klayman v. Judicial Watch, Inc.*,
    No. 06-670, 2008 WL 11394169 (D.D.C. Mar. 12, 2008) ............................................26, 27

*Lelchook v. Lebanese Canadian Bank, SAL*,
    No. 1:18-CV-12401, 2023 WL 3033694 (S.D.N.Y. Apr. 21, 2023) ......................................17

*Linder v. Calero-Portocarrero*,
    180 F.R.D. 168 (D.D.C. 1998)..........................................................................16, 21

*Med. Components, Inc. v. Classic Med., Inc.*,
    210 F.R.D. 175 (M.D.N.C. 2002) .......................................................................21, 28

*Midwest Franchise v. Metromedia Rest. Grp.*
    177 F.R.D. 438 (N.D. Iowa 1997) .........................................................................11

*Moore v. USC Univ. Hosp., Inc.*,
    No. 2:07-cv-07850, 2019 WL 1751817 (C.D. Cal. Feb. 12, 2019) ..................................8, 9, 13

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affs.*,
    257 F.R.D. 12 (D.D.C. 2009)........................................................................13, 14, 20

*Nalco Co. v. Turner Designs, Inc.*,
  No. 4:13-cv-02727, 2014 WL 1311571 (N.D. Cal. Mar. 31, 2014) ........................................19

*\*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y ("Ctr. For Study")*,
  No. 1:21-mc-00065, 2023 WL 2467738 (D.D.C. Mar. 7, 2023) ..................................... *passim*

*N. Carolina Right to Life, Inc. v. Leake*,
  231 F.R.D. 49 (D.D.C. 2005).................................................................................................15

*Packer v. Hansen*,
  No. 2:98-CV-00380, 1999 WL 1038343 (E.D. Pa. Nov. 12, 1999) ........................................24

*Pizana v. Sanmedica Int'l, LLC*,
  No. 18-CV-00644, 2021 WL 1060440 (E.D. Cal. Mar. 18, 2021) ...................................13, 14

*Republic of Argentina v. NML Cap., Ltd.*,
  573 U.S. 134 (2014).................................................................................................................12

*Slate v. Am. Broad. Cos. Inc.*,
  802 F. Supp. 2d 22 (D.D.C. 2011), *aff'd* 584 F. App'x 2 (D.C. Cir. 2014).............................24

*Stanley Works v. Newell Co.*,
  No. 92 C 20157, 1992 WL 229652 (N.D. Ill. Aug. 27, 1992).................................................22

*In re Subpoena to Apple Inc.*,
  No. 5:14–cv–80139, 2014 WL 2798863 (N.D. Cal. June 19, 2014) ......................................19

*Tucker v. Am. Int'l Grp., Inc.*,
  281 F.R.D. 85 (D. Conn. 2012)...............................................................................................21

*United States v. Conces*,
  507 F.3d 1028 (6th Cir. 2007) ................................................................................................12

*United States ex re. Shamesh v. CA, Inc.*,
  314 F.R.D. 1, 2 (D.D.C. 2016).................................................................................................14

*Valerio v. Boise Cascade Corp.*,
  80 F.R.D. 626 (N.D. Cal. 1978)...............................................................................................11

*Viking Yacht Co. v. Composites One LLC*,
  No. 3:07-MC-001, 2007 WL 869623 (E.D. Tenn.) .................................................................25

*Watts v. S.E.C.*,
  482 F.3d 501 (D.C. Cir. 2007)....................................................................................15, 20, 21

**Statutes**

15 U.S.C. § 57b-2(b)...................................................................................................................19

Federal Trade Commission Act Section 5, 15 U.S.C. § 45 .............................................................2

**Other Authorities**

Fed. R. Civ. P. 26 .................................................................................................... *passim*

Fed. R. Civ. P. 45 .................................................................................................... *passim*

Fed. R. Civ. P. 60 .................................................................................................... *passim*

Oversight of the Federal Trade Commission Before the H. Comm. on the
    Judiciary, 118th Cong. (2023) (statement of Rep. Jim Jordan, Chairman, H.
    Comm. on the Judiciary) (1:27:20), available at
    https://judiciary.house.gov/committee-activity/hearings/oversight-federal-
    trade-commission. ...........................................................................................................19, 20

Ernst & Young LLP ("EY"), by and through its undersigned counsel, hereby submits this memorandum of law in opposition to the Motion to Compel Compliance with Subpoena ("Motion" or "Mot.") filed by X Corp., successor in interest to Twitter, Inc., ("Twitter") (Dkt. 1).

## I.   __INTRODUCTION__

Twitter unilaterally served vastly overbroad post-judgment discovery on nonparty EY in connection with Twitter's effort to overturn a settled action in which it consented to the entry of a Stipulated Order.  It did so without first obtaining the requisite leave from the California Court that retained jurisdiction over the construction, modification, and enforcement of the Stipulated Order entered in the underlying action between Twitter and the Federal Trade Commission ("FTC").  Twitter cites to no legal basis in the Federal Rules of Civil Procedures, the Stipulated Order, any order of the California Court, or the case law that supports its unilateral and unauthorized exercise of the subpoena power.  Instead, Twitter's Motion deems it "irrelevant" that the Stipulated Order conspicuously authorized *only* the FTC, its opponent in the underlying action—and not Twitter—to use discovery devices post-judgment.  It is not irrelevant—it dramatically underscores the fact that Twitter has no authorization to issue discovery without leave of the California Court.  Further, Twitter fails to even mention that it sought leave from the California Court with jurisdiction over the Stipulated Order to seek discovery *from the FTC* in connection with its motion—leave that has *not* been granted.  Twitter's Subpoena amounts to a brazen attempt to circumvent the authority of the California Court in connection with a Stipulated Order that Twitter agreed to and, instead, to ask this Court to impose a significant burden on nonparty EY.  This Court should reject Twitter's baseless request.

 In addition to lacking legal authorization, the Subpoena seeks documents that are not relevant to any claim or defense in the underlying action, is facially overbroad and imposes an

undue burden on EY, a nonparty, and seeks confidential and privileged documents without justification.

In written objections, EY advised Twitter of the deficiencies inherent in its Subpoena, but Twitter pressed on, forcing EY to incur substantial expense in defending against this Motion. Accordingly, Twitter should be compelled to reimburse EY's fees incurred in defending itself against Twitter's blatant disregard of the law and abuse of discovery processes.

## II.    **BACKGROUND**

### A.    **Resolution of the Underlying Action**

Twitter issued the Subpoena to EY in relation to an action filed in the United States District Court for the Northern District of California entitled *United States of America v. Twitter, Inc.*, Case No. 3:22-cv-03070 (the "Underlying Action").  (*See generally* Mot.)  On May 25, 2022, the United States of America, acting upon notification and authorization to the Attorney General by the FTC, filed a complaint against Twitter in the District Court for the Northern District of California.  (Ex. A.[1])  The complaint alleges that Twitter violated Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, because Twitter made material misrepresentations to its users about the extent to which it maintained and protected the security and privacy of their nonpublic contact information, and it also violated its 2011 settlement order with the Federal Trade Commission.  (Ex. A ¶ 2.) Specifically, the FTC alleged that although Twitter invited users to provide cell phone numbers or email addresses for security purposes, such as account recovery, the company used this data to serve ads and enrich itself.  (*Id.* ¶ 27.)  The sole parties to the Underlying Action are the FTC and Twitter.  (*See generally* Ex. A.)  EY is ***not*** now, and never was, a party to the Underlying Action.

---

[1] Exhibits are to the Declaration of Laura Riposo VanDruff ("VanDruff Decl."), filed concurrently herewith, unless otherwise noted.

Also on May 25, 2022, the parties to the Underlying Action—the FTC and Twitter—filed a Joint Motion for Entry of Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief, requesting that the California Court promptly enter a stipulated order.  (Ex. B.)  Through entry of the stipulated order, the parties to the Underlying Action claimed to have "resolved all issues in this matter." (*Id.* at p. 2.)  Accordingly, the parties requested that the court "effectuate [the] resolution" by entering the proposed order.  (*Id.* at p. 3.)

On May 26, 2022, Magistrate Judge Hixson (the "California Court") signed the Stipulated Order.  (Ex. C at p. 4 (the "Stipulated Order").)  Under the Stipulated Order, Twitter agreed to (i) pay $150 million in civil penalties, (ii) reopen the underlying administrative proceedings, (iii) modify the Decision and Order in *In re Twitter, Inc.*, C-4316, 151 FTC LEXIS 162 (F.T.C. Mar. 2, 2011) with the Decision and Order set forth in Attachment A to the Stipulated Order, and (iv) submit to substantial compliance reporting measures to ensure future compliance with the law. (*See generally id.* at pp. 2-3.)  In order to monitor Twitter's compliance, the Stipulated Order authorizes the FTC to obtain discovery, without further leave of court, using the procedures prescribed by Federal Rules of Civil Procedure ("Rules") 29, 30, 31, 33, 34, 36, 45, and 69.  (*Id.* at p. 20.)  The Stipulated Order provides no parallel provision authorizing Twitter to use the listed discovery devices without leave of court.  The Court retained jurisdiction over the Underlying Action solely "for purposes of construction, modification, and enforcement of this Stipulated Order" but otherwise "close[d] the file."  (*Id.* at p. 4.)

**B.     EY's Role as Independent Assessor**

Under the terms of the Stipulated Order, Twitter is required to obtain biennial assessments by "qualified, objective, independent third-party professionals." (Ex. C at p. 15 (Attach. A at 8).)  In September 2022, Twitter engaged EY to serve as the independent assessor under the terms of the Stipulated Order.  (Ex. D.)  EY resigned its position as Twitter's independent assessor on

February 27, 2023. (Ex. E at 0059.)  Notwithstanding speculation by Twitter, EY's decision to terminate its engagement as Twitter's independent assessor was a business decision motivated by multiple factors, including the departure of Twitter employees responsible for the privacy and information security program, the availability of Twitter employees with subject matter expertise, the impacts of significant organizational changes at Twitter, and the delay to the project timeline requested by Twitter.  (*See generally* Ex. E.)

Following EY's resignation, and pursuant to the FTC's authority to seek post-judgement discovery under the Stipulated Order to monitor Twitter's compliance with the Order, the FTC sought discovery from EY regarding the reasons for EY's resignation.  (Dkt. 1-10.)  In addition to producing documents, EY produced David Roque, the engagement partner for EY's independent assessment of Twitter, for a deposition on June 21, 2023.  (Dkt. 1-9.)  At the deposition, Twitter's counsel questioned Mr. Roque extensively.  (*Id.*)

### C.     Twitter's Post-Resolution Subpoena

Over a year after the California Court entered the Stipulated Order, Twitter filed a Motion for Protective Order and Relief from Consent Order pursuant to Rule 60(b) ("Rule 60 Motion"), requesting that the California Court enter an order terminating or modifying the Stipulated Order. (Dkt. 1-3.)  Twitter's Rule 60 Motion is premised on an argument that the FTC improperly attempted to influence EY's independent assessment of Twitter's compliance with the Stipulated Order such that continued enforcement of the Stipulated Order is inequitable.  (*Id*. at p. 24.)  In the alternative, Twitter seeks leave from the California Court to obtain discovery from the FTC— discovery that Twitter characterized as "necessary for a complete factual record"—and a stay of the notice of deposition of Elon Musk issued by the FTC, but Twitter did *not* seek leave to take discovery from nonparties such as EY.  (*Id.* at p. 32.)  Twitter's Rule 60 Motion is set for hearing on November 16, 2023.  (Ex. F.)

Twitter did not wait to see if the California Court will grant the leave it requested to seek discovery from the FTC.   Instead, Twitter demanded that EY—a nonparty to the Underlying Action—provide discovery in response to its Subpoena putatively in support of its Rule 60 Motion. Counsel for Twitter requested the following categories of documents: (1) All written communications between EY and FTC/FTC staff from May 26, 2022 to present; (2) All documents, communications, or other materials that describe, summarize, memorialize, or otherwise record or attempt to record any oral communications between EY and FTC/FTC staff from May 26, 2022 to present; and (3) All other documents or communications relating to written or oral communications with FTC/FTC staff from May 26, 2022 to present. (Dkt. 1-17 at p. 3; VanDruff Decl. ¶ 9.)  During a phone call, counsel for Twitter explained that Twitter intended for at least the third category to include notes or other documents from the custodial file of EY's in-house counsel, who participated in telephone conversations with FTC Staff.  (Dkt. 1-17 at p. 3; VanDruff Decl ¶ 10.)  Twitter made these requests for documents despite having explored these issues at length at Mr. Roque's deposition and despite not yet having received a ruling from the California Court on its request for leave to pursue additional discovery.  (*See, e.g.*, Dkt. 1-9 (Roque Dep. Tr.).)  EY declined to produce the requested documents, but in an effort to resolve the matter, did offer to produce "EY's non-privileged communications with the FTC – on the condition that Twitter does not subsequently seek the production of additional EY materials." (Dkt. 1-17 at p. 3; VanDruff Decl. ¶ 11.)  Twitter did not respond.  (*Id.*)

On August 3, 2023, Twitter served a subpoena deuces tecum on EY (the "Subpoena"). (Dkt. 1-18; VanDruff Decl. ¶ 12.) The Subpoena is broader than the previous request from Twitter's counsel, and requests five categories of documents:

> 1.    All COMMUNICATIONS between YOU and the FEDERAL TRADE COMMISSION.

2.        All DOCUMENTS or COMMUNICATIONS that describe, summarize, memorialize, or otherwise record or attempt to record any oral COMMUNICATIONS between YOU and the FEDERAL TRADE COMMISSION.

3.        All other DOCUMENTS or COMMUNICATIONS RELATING to written or oral COMMUNICATIONS with the FEDERAL TRADE COMMISSION.

4.        All COMMUNICATIONS RELATING TO David Roque's testimony on June 21, 2023, from June 21, 2023 to the present.

5.        All COMMUNICATIONS RELATING TO the motion filed by X CORP. in the ACTION on July 13, 2023, from July 13, 2023 to the present.

(Dkt. 1-18 at p. 9 (the "Requests").)

In response, EY served timely objections, both general and specific. (Dkt. 1-19.) EY objected to the Subpoena as legally improper, overly broad, and unduly burdensome for several reasons, including that: (a) Twitter's issuance of the Subpoena under Rule 45 is without legal basis because the California Court entered a Stipulated Order resolving the complaint in the Underlying Action and, therefore, there are no claims or defenses pending; (b) the Stipulated Order authorizes only the FTC, not Twitter, to seek discovery without first obtaining leave of court, which Twitter lacks; (c) the documents sought are available from a party to the Underlying Action—the FTC; (d) the Requests are overbroad, are not proportional to the needs of the case, and seek confidential information because they are not limited as to subject matter and therefore seek documents regarding the engagement of EY by third parties wholly unrelated to Twitter or the Underlying Action; and (e) the Requests, as drafted, encompass communications, memoranda, and notes prepared by counsel and protected by the attorney client privilege or work product doctrine. (*Id.*)

On August 21, 2023, counsel for EY and Twitter conferred regarding the Subpoena. (VanDruff Decl. ¶ 14.) Twitter's counsel offered to narrow the scope of Requests 1, 2 and 3 to communications between EY and the FTC that relate to Twitter, X Corp., or Elon Musk. (*Id.*)

Twitter also proposed narrowing the Subpoena to documents that EY previously produced to the FTC but continued to assert the need for privileged documents.  (*Id*.)  EY continued to assert that Twitter lacked legal authority to issue the Subpoena and that Twitter was not entitled to privileged materials.  (*Id.*)  As a result, no resolution was reached and Twitter's Motion followed.

## III.    <u>LEGAL STANDARD</u>

Rule 45 governs the issuance of subpoenas and, relatedly, motions to compel.  *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 338 (D.D.C. 2021).  "Because Rule 45 incorporates the Rule 26 relevancy requirement, the Court must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation."  *Id.*  (internal quotations omitted).  "Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden." *Id*.  The Court has the inherent power to limit discovery if it determines that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(i).  The court for the district where compliance is required may impose an appropriate sanction, including lost earnings and reasonable attorney's fees, on a party or attorney who fails to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  *See* Fed. R. Civ. P. 45(d)(1).

## IV.    <u>ARGUMENT</u>

The Court should deny Twitter's Motion to compel compliance with its unauthorized and improper Subpoena.  First, Twitter had no legal basis to serve the Subpoena on EY because Rule 45 does not authorize post-judgment discovery and the California Court has not granted Twitter leave to seek discovery in connection with its Rule 60 Motion.  Second, because the Stipulated Order resolved all claims in the Underlying Action, and the case was closed, the documents sought

by the Subpoena are not relevant to any claim or defense.  Third, the vastly worded Requests impose an undue burden on EY, a nonparty.  Fourth, Twitter's Requests seek confidential documents not just of nonparty EY, but also of absent fourth parties.  Fifth, the Subpoena improperly seeks privileged documents.  Because of the egregious circumstances present, EY requests that Twitter be ordered to pay its fees incurred in opposing this Motion.

### A.      Twitter Identifies No Legal Basis to Seek Discovery from EY.

Twitter served the Subpoena and filed this Motion with no legal basis to seek discovery from anybody, much less a nonparty to the Underlying Action.  Not the Federal Rules of Civil Procedures, the Stipulated Order, any order of the California Court, or the case law cited in Twitter's Motion provide Twitter with authority to propound post-judgment discovery in connection with its Rule 60 Motion without first obtaining leave from the California Court—leave Twitter has failed to seek.  While Twitter requested authorization from the California Court to seek post-judgment discovery from the FTC, it never requested leave to seek discovery from nonparty EY, nor did it wait for the California Court's ruling regarding discovery from the FTC, which would largely moot this Subpoena.  Twitter should not be permitted to circumvent the California Court's authority by moving to compel compliance with an unauthorized subpoena before this Court.

### 1.      Rules 45 and 26 do not authorize post-judgment discovery.

Twitter cites Rules 45 and 26 as the "legal standard" supporting the Subpoena.  (Mot. at 12-13.)  However, Twitter cannot serve a valid subpoena under Rule 45 because the Underlying Action has been resolved and the file closed.  *See Moore v. USC Univ. Hosp., Inc.*, No. 2:07-cv-07850, 2019 WL 1751817, at *1 (C.D. Cal. Feb. 12, 2019) ("Rule 45 does not authorize a party to issue a subpoena after discovery closes, much less after the entire case has been decided.").  "[T]he flexible discovery provisions of the Federal Rules of Civil Procedure are applicable only to the

period of time between the pleadings and trial." *U.S. ex rel. Free v. Peters*, 826 F. Supp. 1153, 1154 (N.D. Ill. 1993). "[P]ost-judgment discovery must be assessed according to policies quite apart from those at stake in the period before trial." *Goldy v. Beal*, 91 F.R.D. 451, 454-55 (M.D. Pa. 1981). Accordingly, the "normal rules concerning interrogatories and requests for documents do not apply" to a party preparing a Rule 60 motion. *Id*. at 454.

Twitter's Stipulated Order is a final judgment. It resolved all of the FTC's claims and established the parties' rights and expectations. (*See* Ex. C at p. 1 (noting that the Stipulated Order was entered to "resolve the claims for civil penalties and injunctive relief set forth in the Complaint."); Mot. at 4 (conceding that the Stipulated Order "resolv[ed]" the FTC's 2022 complaint).) Twitter consented to the entry of the Stipulated Order, which directed that the Clerk to "close the file." (Ex. C at p. 4.) Because the Underlying Action is closed and no claims pending,[2] "Rule 45 does not apply, and there are no issues remaining to which the information sought in the subpoena might be relevant." *See Moore*, 2019 WL 1751817, at *1 ("Rule 45 governs subpoenas in *pending* cases." (emphasis added)).

### 2.     Rule 60 does not provide an automatic right to discovery.

Twitter apparently contends that it can utilize discovery devices—despite having no pending claims or defenses—because it has filed a motion for relief from an order under Rule 60(b). (Mot. at 16 ("X Corp. has every right to seek this discovery in connection with its pending motion to modify the consent order.").) However, contrary to Twitter's unsupported assertion, "there is no automatic right to post-judgment discovery under Rule 60," and a determination as to whether discovery is necessary is left to the trier of fact's sound discretion—here, the discretion

---

[2] Even if the Stipulated Order had not resolved all claims between the parties to the Underlying Action, Twitter's Subpoena would be premature because Rule 26(d) prohibits parties from seeking discovery from any source before the parties to the action have conferred pursuant to Rule 26(f),which has not yet occurred. Fed. R. Civ. P. 26(d), (f).

of the California Court.  *See Dobyns v. United States*, 127 Fed. Cl. 63, 72 (Ct. Fed. Cl. 2016)

(citing *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976))

(analyzing identical Rule 60 of the U.S. Court of Federal Claims).

Permitting parties burdened by unfavorable judgments to use discovery without court

oversight would undermine the finality of judgments and empower disgruntled parties to conduct

abusive fishing expeditions without restraint.  In a decision affirming the district court's denial of

post-judgment discovery in connection with a Rule 60(b) motion for relief from judgment, the

Sixth Circuit explained that:

> [A] request for discovery for the purpose of attacking a final
> judgment involves considerations not present in pursuing discovery
> in a pending action prior to a judgment. Primary among these
> considerations is the public interest of the judiciary in protecting the
> finality of judgments.

*H. K. Porter Co.,* 536 F.2d at 1118.  The court in *Goldy* also contemplated the consequences if

post-judgment discovery were freely available:

> If the court granted plaintiffs the right to discovery at this point, then
> the logic of its decision would subject nearly every party enjoying
> the benefits of a permanent injunction to a perpetual duty to endure
> discovery throughout years following the close of the suit. That
> result would be anomalous, since it would flout the entire concept
> of "final judgment," and impose burdens far beyond those
> envisioned by the Federal Rules of Civil Procedure.

91 F.R.D. at 455-56.  As such, courts considering the issue have held that before a party can seek

post-judgment discovery in connection with a Rule 60 motion, it must make a prima facie showing

to the trial court that it is entitled to such discovery.  *See, e.g., id.* at 456 (denying post-trial

discovery because without a prima facie showing, it would amount to a fishing expedition five

years after judgment); *Peters*, 826 F. Supp. at 1154 ("[C]ourts generally embrace restrictive

discovery rights post-trial, requiring a prima facie demonstration of success on the merits.");

*Midwest Franchise v. Metromedia Rest. Grp.* 177 F.R.D. 438, 440 (N.D. Iowa 1997) (holding that

post-judgment discovery is available in Rule 60(b) matters only upon prima facie showing that relief may be provided); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 647 (N.D. Cal. 1978) (citing the public interest in the finality of judgments to deny post-trial discovery where the plaintiffs had not made a prima facie demonstration of success on the merits).  Twitter made no such prima facie showing.

Before Twitter is permitted to engage in discovery to upset the Stipulated Order it agreed to, it must demonstrate to the California Court that it has sufficient cause to do so.  It has not done so with respect to any third party, much less EY specifically.  Twitter filed a motion with the California Court requesting "authoriz[ation] to obtain discovery from the FTC" to support its Rule 60 Motion, (Dkt. 1-3 at p. 31), but it did not wait to see if the California Court would actually grant the motion.  By making that request, Twitter acknowledged that it was *required* to seek leave of the California Court to obtain discovery.  Yet, as to EY, Twitter seeks to circumvent the California Court's authority by asking this Court to order discovery from EY.  The California Court retained jurisdiction for this exact purpose and is best suited to assess whether Twitter has made "a prima facie demonstration of success on the merits" sufficient to warrant burdening parties and nonparties with post-judgment discovery.  *See Peters*, 826 F. Supp. at 1154.  This Court should not permit Twitter to circumvent the California Court's jurisdiction by sneaking in the back door and requesting that this Court compel production.

None of Twitter's cited cases support an argument that a party subject to a binding judgment can seek discovery from third parties to investigate potential grounds to seek relief from that judgment *without first seeking leave from the trial court*.  (*See* Mot. at 16.)  In fact, the case law cited by Twitter in its Motion underscores EY's position that post-judgment discovery requires authorization by the court that oversaw the underlying judgment.  *See, e.g.*, *United States v.*

*Conces*, 507 F.3d 1028, 1033 (6th Cir. 2007) (after defendant failed to comply with injunctive award permanently enjoining defendant from promoting any schedule to avoid tax liability, district court granted Government "permission to conduct post-judgment discovery to ensure compliance"); *Cali. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033-36 (9th Cir. 2008) (addressing *request for authorization* to engage in post-judgment discovery by court that entered underlying judgment).  Twitter's remaining case law is irrelevant to whether it has authority to seek discovery here.  *See, e.g.*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) (not addressing the availability of discovery after the entry of consent decree); *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138-39 (2014) (addressing inapplicable Rule 69(a)(2), which authorizes a *judgment creditor* to seek post-judgment discovery for purposes of satisfying a money judgment).

Finally, Twitter's argument that EY did not raise relevance objections in response to a subpoena received from the FTC (Mot. at 16) ignores the fact that the FTC is expressly authorized by the Stipulated Order to seek post-judgment discovery without leave of court.  That the Stipulated Order only authorizes the FTC to seek post-judgment discovery, and not Twitter, is not "irrelevant" as Twitter contends, (*id.*), but rather is the crux of the issue.  Twitter has no authorization under the law or the Stipulated Order to propound post-judgment discovery (unlike the FTC).[3]

### B.    Twitter's Subpoena Seeks Documents That Are Not "Relevant."

Even if Twitter had a legal basis to seek discovery in connection with the Underlying Action, its Motion should be denied because the documents sought are not "relevant" under Rule 26.  It is settled law that a subpoena is limited in scope by the relevance principles from Rule 26(b)(1).  *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y ("Ctr. For Study")*, No. 1:21-

---

[3] Nevertheless, EY offered to produce it its non-privileged communications with the FTC to avoid motion practice, an offer Twitter rejected.  (Dkt. 1-17 at p. 3.)

mc-00065, 2023 WL 2467738, at *3 (D.D.C. Mar. 7, 2023).  Under Rule 26, the scope of discovery is limited to "any nonprivileged matter that is relevant to any party's ***claim*** or ***defense*** and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  "[C]ourts have routinely held that it is a generally accepted rule that standards for nonparty discovery require a stronger showing of relevance than for simple party discovery."  *Pizana v. Sanmedica Int'l, LLC*, No. 18-CV-00644, 2021 WL 1060440, at *2 (E.D. Cal. Mar. 18, 2021) (quotations omitted).

Nowhere in its Motion does Twitter contend that the discovery it seeks has any relevance to "claims" or "defenses" raised in the Underlying Action; rather, Twitter conflates "claim" and "defense"—two terms with plain and well-defined meanings—with the issues raised in its post-judgment ***motion.***  (Mot. at 15.)  This argument lacks merit.  When considering whether a subpoena is relevant to any "claim" and "defense," courts consider the merits and whether the documents "may be relevant at trial."  *Ctr. for Study,* 2023 WL 2467738, at *3 (internal quotations omitted).  It is undisputed that the merits of the Underlying Action concerned a dispute between Twitter and the FTC involving Twitter's alleged misuse of consumer data.  However, as discussed above, the Underlying Action has already reached final judgment, vitiating the Subpoena's relevance to any claims or defenses in the Underlying Action.  (*See* Ex. B at p. 2 (the parties "resolved all issues" in the matter); Mot. at 4 (Stipulated Order "resolv[ed] the 2022 complaint").)  Once an action is closed, "there are no issues remaining to which the information sought in the subpoena might be relevant."  *Moore*, 2019 WL 1751817, at *1 (internal quotation omitted).  And, with respect to Twitter's contention that its Rule 60 Motion permits it to redefine the scope of relevant discovery, courts have rejected similar attempts to stretch Rules 45 and 26, particularly where, as here, the discovery is sought from a nonparty.  *See, e.g.*, *id.*, at *2 (documents related to Rule 60 motion were nonetheless irrelevant "[b]ecause they would not alter the outcome" of the underlying

13

claims); *Pizana*, 2021 WL 1060440, at *2 (stronger showing of relevance necessary for nonparty discovery).  As such, because it is "not evident that the documents that [Twitter] seek[s] to compel in this litigation . . . are directly relevant to [Twitter's] defense[s] in the [California] litigation," Twitter's Motion fails.  *Ctr. for Study*, 2023 WL 2467738, at *3 (D.D.C. Mar. 7, 2023) (internal quotations omitted).

None of Twitter's cited authority regarding relevance provides for a contrary result.  Both cited cases concern discovery relevant to pending *claims* asserted in active litigation, as opposed to a post-judgment *motion*.  (*See* Mot. at 15.)  For instance, the subpoena in *In re Denture Cream Products Liability Litigation* sought documents bearing directly on the issue of causation in a pending products liability suit scheduled for trial.  292 F.R.D. 120, 124 (D.D.C. 2013).  The documents sought were relevant to plaintiffs' "claim" that the defendants' product caused neurological injury.  *Id.* at 122.  And *United States ex re. Shamesh v. CA, Inc.* did not concern the scope of a nonparty subpoena at all, but instead a request from the defendant to compel the production of documents by the plaintiff.  314 F.R.D. 1, 2 (D.D.C. 2016).  The defendant sought documents bearing on the plaintiff's *claim* for violation of the False Claims Act.  *Id.* at 8.  Twitter's Subpoena, in contrast, is not relevant to any claims or defenses asserted in the Underlying Action, and Twitter's attempt to obfuscate the relevance inquiry by relying on its Rule 60 Motion is unsupported by the law.

## C.     The Requests Are Overly Broad and Unduly Burdensome For a Nonparty.

Given that the documents sought by the Subpoena lack "relevance" under Rule 26, the Subpoena necessarily imposes an undue burden on EY, a nonparty to the Underlying Action.  The issue of whether a subpoena imposes an "undue burden" requires courts to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."  *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017).  Where "the burden of producing

[the] information outweighs its relevance," the "Subpoena must be quashed or modified." *Ctr. for Study*, 2023 WL 2467738, at *4 (quotations omitted); *see also N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (same); *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 43 (D.D.C. 2015) (quashing subpoena "[g]iven the attenuated relevance of [the] documents, and the burden in producing them"). To evaluate the burden imposed, courts consider a variety of factors, including:

> (1) whether the discovery sought is unreasonably cumulative or duplicative; (2) whether the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive; and (3) whether the discovery sought is proportional to the needs of the case, taking into account the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Ctr. for Study*, 2023 WL 2467738, at *2 (internal quotations omitted); *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) (same).

Here, it is apparent that Twitter's Subpoena presents an undue burden when the burden imposed on EY, a nonparty, is weighed against the utter lack of relevance. First, the Subpoena is unduly burdensome because it is overbroad, seeking large swathes of documents not reasonably limited in scope. Second, and as Twitter concedes, the most essential documents it seeks are available from the FTC, a party to the Underlying Action, and currently subject to a pending request before the California Court. Finally, Twitter's Subpoena would impose a substantial burden on EY, in addition to the time and expense already incurred in opposing Twitter's wasteful Motion. When facing burdensome subpoenas, "courts must safeguard non-party subpoena recipients from significant expense resulting from compliance." *Educ. Fin. Council v. Oberg*, No.

10-mc-79, 2010 WL 3719921, at *2 (D.D.C. Mar. 8, 2010) (internal quotations omitted). This Court should deny Twitter's Motion.

### 1.     The Subpoena is overbroad

On its face, Twitter's Subpoena is overbroad and demands EY produce more documents than are reasonably related to its Rule 60 Motion, much less any claim or defense. "Undue burden can be found when a subpoena is facially overbroad." *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998) (internal quotations omitted). As is the case here, a subpoena is overbroad when it contains open-ended requests without any "specificity or focus" to the relevant subject matter. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (holding that facially overbroad subpoena not limited in scope imposed undue burden). Here, several of the Requests are unlimited in scope, encompassing information that has no relation to Twitter or the Underlying Action, and other Requests are necessarily irrelevant by their terms. And, due to their breadth, all of the requests require EY to sift through tens of thousands of potentially responsive documents, many of which are likely to contain privileged information because Twitter insists that EY include its in-house counsel among the custodians. (Declaration of Thomas Reddy ("Reddy Decl.") ¶¶ 7-14; VanDruff Dec. ¶ 10.)

It is clear that Twitter made little effort to tailor the Requests. For instance, Requests 1, 2, and 3 seek "ALL" communications or documents pertaining to communications with the FTC, regardless of which clients EY was serving in connection to such communications. (Dkt. 1-18 at p. 9.) EY is a large professional services firm with thousands of clients, any of whom might involve EY in communications with the FTC. (Reddy Decl. ¶ 15.) By seeking all communications between EY and the FTC, along with all documents reflecting or relating to any communication, Twitter's requests "encompass virtually every document in [EY's] possession related to" communications with the FTC, whether or not it has anything to do with Twitter or the Underlying

Action.  *See Ctr. for Study*, 2023 WL 2467738, at *4 (request for "all" documents related to nonparty's involvement in federal litigation was overbroad); *Concord Boat Corp.*, 169 F.R.D. at 50-51 (holding that subpoena that sought discovery of "virtually every document" relating to the defendant that was generated or maintained by a nonparty witness during the past ten years was overbroad); *accord Oberg*, 2010 WL 3719921, at *4 (rejecting a request for not being limited to "only some narrowed category of documents most likely to contain relevant information").  It is difficult to imagine what documents or information would *not* be swept up in this request, thus making it improper.  *Ctr. for Study*, 2023 WL 2467738, at *4; *see also Concord Boat Corp.*, 169 F.R.D. at 50 ("[A] subpoena [that] sweepingly pursues material with little apparent or likely relevance to the subject matter [] runs the greater risk of being found overbroad and unreasonable."); *Lelchook v. Lebanese Canadian Bank, SAL*, No. 1:18-CV-12401, 2023 WL 3033694, at *3 (S.D.N.Y. Apr. 21, 2023) (finding that a subpoena seeking "all" documents "referring or related to" certain persons is not sufficiently tailored and "is presumptively overbroad and improper").

Even the two Requests that contain some substantive scope are still overbroad on their face.  Requests 4 and 5 seek "[a]ll communications" relating to David Roque's testimony from June 21, 2023 to the present and "[a]ll communications" relating to Twitter's Rule 60 Motion from July 13, 2023 to the present.  (Dkt. 1-18 at p. 9.)  But these requests, and the applicable time frames, are unrelated to the subject matter of Twitter's Rule 60 Motion: the FTC's allegedly "irregular and improper conduct" ***during the course of EY's independent assessment of Twitter***.  (Mot. at 10.)  Such Requests would, for instance, include internal discussions between EY and its media relations personnel regarding Twitter's Rule 60 Motion, which are plainly irrelevant and intended to be confidential.  (Reddy Dec. ¶ 16.)

17

As Twitter notes in its Motion, "EY resigned its position as X Corp.'s independent assessor on February 27, 2023."  (Mot. at 7; *see also* Ex. E, at 0059.)  That is, the conduct relevant to the merits of the Rule 60 Motion necessarily took place on or before February 27, 2023—well before David Roque's deposition and the filing of Twitter's Rule 60 Motion.  Documents created several months after EY terminated its engagement with Twitter as independent assessor have, at best, tangential relevance to the issues in the Rule 60 Motion.[4]  By focusing the requests on irrelevant time periods, these requests are overbroad.  *In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12 MC 221, 2012 WL 4841945, at *9 (S.D.N.Y. Oct. 10, 2012) (quashing a request seeking documents for a time period in which none of the alleged conduct occurred); *Oberg*, 2010 WL 3719921, at *5 (modifying a subpoena request to exclude documents created during a time period with "little or no bearing on the claims in [the] suit").

### 2.    The documents are available from a party to the Underlying Action.

The Subpoena imposes an undue burden on EY because the bulk of the documents sought, including those most relevant to Twitter's Rule 60 Motion, are available from a party to the Underlying Action—the FTC.  Under the Federal Rules, the Court may limit discovery "if it determines that [] the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Additionally, where the entity against whom discovery is sought is not a party to the case, Rule 45 requires that the "party or attorney responsible for issuing and serving a subpoena ***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1) (emphasis added).  Twitter failed to comply with its obligations under Rules 45 and 26 when it served the Subpoena on EY seeking documents that are equally obtainable from the FTC.

---

[4] Requests 1, 2, and 3, which seek documents from May 25, 2022 to present, are also overbroad for the same reason.

A subpoena imposes an undue burden on a nonparty if it seeks documents that are available from a party to the underlying action.  In *In re Subpoena to Apple Inc*., the court rejected a subpoena served on a nonparty for the sole reason that the requests at issue encompassed a set of communications between the third party and the defendant. No. 5:14–cv–80139, 2014 WL 2798863 (N.D. Cal. June 19, 2014).  The *Apple* court held that the burden on the third party was "unwarranted" because the documents were in the possession of the defendant in the underlying case.  *Id.* at *3 ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *see also Oberg*, 2010 WL 3719921, at *3 (holding that request from nonparty imposed undue burden because documents were available from defendant to underlying litigation); *Nalco Co. v. Turner Designs, Inc*., No. 4:13-cv-02727, 2014 WL 1311571, at *2 (N.D. Cal. Mar. 31, 2014) ("Nalco has not explained why it cannot get these documents from Turner, who is a party to this litigation.  This alone is sufficient to warrant denying Nalco's request to compel this category of documents.").

The Subpoena largely concerns communications between EY and the FTC, as well as records or documents memorializing those communications.  (Dkt. 1-18 at p. 9.)  For obvious reasons, a communication between EY and the FTC is equally obtainable from the FTC.  Through its repeated offer to accept the documents EY previously produced to the FTC, Twitter has made plain that these are the subset of documents in which it is most interested.[5]  (Mot. at 12; Dkt. 1-2,

---

[5] While Twitter argues that these documents could be produced without imposing a significant burden, (Mot. at 18-19), it fails to mention that EY has already offered to provide a subset of such documents to Twitter.  (Dkt. 1-17 at p. 3.)  However, in exchange for this production, EY in turn requested that X Corp. agree to not seek future nonparty discovery against it.  (*Id.*)  Twitter refused to do so.  Further, EY's production of these documents to the FTC was subject to the FTC Act's confidentiality protections.  15 U.S.C. § 57b-2(b).  Twitter has offered no such confidentiality for EY's production.  Indeed, Twitter's Rule 60 Motion caused David Roque's deposition testimony to be highly publicized—even quoted during a public hearing of the U.S. House Judiciary Committee.  *See Oversight of the Federal Trade Commission Before the H. Comm. on the*

¶ 23.)  These are documents that are, by definition, in the FTC's possession.  Twitter offers no explanation for why it is not properly awaiting a ruling from the California Court on its request to obtain these documents from the FTC and is instead burdening this Court and EY with this Motion.

Twitter does not dispute that these documents are, in large part, available from the FTC. Instead, Twitter contends that it is not required to seek the documents from the FTC before burdening EY.  (Mot. at 19 (citing *Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. May 17, 2018).)  But this argument and its out-of-circuit authority are at odds with applicable case law in this jurisdiction.  The D.C. Court of Appeals has warned "district courts supervising discovery to be generally sensitive to the costs imposed on third parties," including by considering whether the discovery sought is obtainable from "some other source that is more convenient, less burdensome, or less expensive." *Watts*, 482 F.3d at 509 (citing Fed. R. Civ. P. 26(b)(1-2)); *see also Oberg*, 2010 WL 3719921, at *3 ("[T]he Court will not require [the nonparty] to produce cumulative information that is more conveniently obtained from defendants to the underlying litigation."); *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affs.*, 257 F.R.D. 12, 19 (D.D.C. 2009) ("Yet, even modifying the subpoena to seek this limited information is unduly burdensome because of the absence of any showing that the information sought is not available from other sources.").[6]  Twitter's attempt to compel EY into providing documents that it instead could—and should—request from the FTC is unreasonable.

---

*Judiciary*, 118th Cong. (2023) (statement of Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary) (1:27:20), available at https://judiciary.house.gov/committee-activity/hearings/oversight-federal-trade-commission.

[6] Other courts similarly recognize that a party's ability to obtain the same information from other sources imposes an undue burden on a nonparty subject to subpoena.  *See, e.g., Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (court may require discovery from a party before burdening a nonparty); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998) (affirming a district court's denial of a motion to compel where the "same information was otherwise available to [the party] by direct discovery"); *Med. Components, Inc. v. Classic Med.*,

### 3.    Compliance with the Subpoena would impose a significant burden.

Because EY is a nonparty to the underlying action, the "unwanted burden thrust upon" it "is a factor entitled to special weight in evaluating the balance of competing needs." *Diamond Servs.*, 339 F.R.D. at 339 (citing *Watts*, 482 F.3d at 509). Rule 45 "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts*, 482 F.3d at 509; *see also Oberg*, 2010 WL 3719921, at *2 ("Courts must safeguard non-party subpoena recipients from significant expense resulting from compliance." (internal quotations omitted)).

Here, if EY were ordered to comply with Twitter's expansive and overbroad requests, it would require EY to sift through tens of thousands of potentially responsive documents. (*See* Reddy Decl. ¶¶ 7-12.). A subpoena is unduly burdensome where it "seeks to impose an onerous discovery burden on a non-party," particularly where the requests are overly broad on their face or encompass documents that could be obtained by a direct party opponent. *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 93 (D. Conn. 2012); *see also Linder v. Calero-Portocarrero,* 180 F.R.D. 168, 175 (D.D.C. 1998) (movant's request search was overbroad because, as written, compliance required an "inordinate amount of time and resources"). And the burden imposed is further exacerbated where the issuing party "asks the Court to impose the expense of the requested search entirely upon [a] non-party." *Tucker*, 281 F.R.D. at 94. Here, EY has conducted preliminary reviews of its records and estimates that such a review could cost EY between $5,496,000 - $6,496,000. (Reddy Decl. ¶18.) Twitter offers no justification for why EY should have to bear this significant expense. As such, "[c]onducting this review would impose substantial costs on

---

*Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) ("The current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a nonparty, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs.").

[EY], which further tips the scales in favor of establishing that the Subpoena constitutes an undue burden." *Ctr. for Study*, 2023 WL 2467738, at *4.

### D.     Twitter's Requests Seek Confidential, Proprietary and Sensitive Business Information Belonging to EY and Other Non-Parties.

Courts have "repeatedly resisted efforts to utilize the liberal federal discovery rules for the purpose of gaining access to proprietary, confidential business information from third parties who have no interest in the litigation." *In Matter of Application of Frates*, No. M8-85, 1985 WL 2752, at *1 (S.D.N.Y. Sept. 25, 1985) (citing *Hecht v. Pro-Football. Inc*., 46 F.R.D. 605, 607 (D.D.C. 1969)).  If confidential information is being sought, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Stanley Works v. Newell Co*., No. 92 C 20157, 1992 WL 229652, at *4-5 (N.D. Ill. Aug. 27, 1992) (refusing to compel production of relevant confidential information based on harm to nonparty); *In re Diaz/Tioga Fruit Terminal, Inc*., No. 97-MC-21, 1997 WL 414944, at *3 (E.D. Pa. July 22, 1997) (undue burden to require nonparty to produce sensitive business documents, particularly if the documents are unnecessary to the underlying litigation and the disclosure of which could cause harm to nonparty's business).  EY's interest in maintaining the confidentiality of its own business records, as well as that of the *fourth parties* that engage EY's services, substantially outweighs any limited relevance of the documents to the claims pending in Underlying Action (of which there are none) or even EY's Rule 60 Motion.

Twitter has not demonstrated that EY's *internal* records regarding communications with the FTC, David Roque's testimony, or the Rule 60 Motion are "necessary" to its case.  Even using Twitter's Rule 60 Motion as the measure of relevance, which it is not, communications from the FTC to EY regarding Twitter are most probative to the issues raised in that motion, to wit, whether

the FTC exerted improper influence.  Any additional utility to be derived from EY's internal communications and documents on this subject is attenuated at best and fails to outweigh the competitive harm to EY by exposing the firm's confidential documents.  (*See, e.g.*, Reddy Decl. ¶ 16 (explaining this this request would include internal discussions with, for instance, EY's media relationships personnel regarding Twitter's Rule 60 Motion).)

In addition, Twitter's Requests seek not only EY's confidential information, but also confidential information pertaining to other nonparties, so called "fourth parties," that were not served with the Subpoena and have no reason to expect that their confidential information may be disclosed.  Specifically, as drafted, Requests 1, 2 and 3 are not limited by subject matter. Accordingly, those Requests encompass not only EY's communications with the FTC about Twitter and the Underlying Action, but also all EY's communications with the FTC about any subject, including communications concerning other clients, which are not now and never were relevant to the claims or defenses in the Underlying Action.  As such, these Requests implicate the confidentiality of the non-parties involved in EY's other engagements that have nothing to do with its former role as the independent assessor of Twitter.  (*See* Reddy Decl. ¶ 15 (explaining that EY has thousands of clients, any of whom might involve EY in communications with the FTC).)

Concerns about protecting the confidentiality of nonparties are particularly pronounced where the discovery sought implicates the confidential information of third parties beyond the recipient of the subpoena.  In *Food Lion, Inc. v. United Food & Commercial Workers International Union, AFL-CIO-CLC*, the D.C. Circuit Court of Appeals issued a "rare" decision overturning a district court's decision to allow discovery, holding that the district court abused its discretion by enforcing a nonparty subpoena seeking "fourth party" documents not relevant to the subject matter of the underlying litigation.  103 F.3d 1007, 1012-13 (D.C. Cir. 1997).  In that case, a grocery store

23

chain was involved in litigation with a labor union and issued a subpoena to the union's nonparty public relations firm seeking documents about the firm's other engagements with other clients, in an effort to prove that the public relations firm had employed the same tactics used in other campaigns. *Id.* at 1009. In overturning the district court's decision, the circuit court warned of the confidentiality concerns implicit in allowing discovery into the records of a fourth party whose only connection to the case was employing the same nonparty firm as an entity involved in litigation. *Id.* at 1014; *see also Packer v. Hansen*, No. 2:98-CV-00380, 1999 WL 1038343, at *5 (E.D. Pa. Nov. 12, 1999) (quashing subpoena issued to nonparty tax preparer because broader restrictions are justified on discovery sought from nonparty about another nonparty); *Slate v. Am. Broad. Cos. Inc.*, 802 F. Supp. 2d 22, 26-27 (D.D.C. 2011) (denying discovery into files containing the confidential and personal information of unrepresented nonparties who were never subpoenaed and were not involved in the lawsuit), *aff'd* 584 F. App'x 2 (D.C. Cir. 2014).

Twitter has not (and cannot) overcome the heightened confidentiality concerns present when "fourth party" documents are at issue with its purported "need" for EY's communications with the FTC about subjects unrelated to Twitter. EY, as well as its clients, have a strong interest in protecting such communications from disclosure. Given the nature of EY's business and the reasons for which it might be engaged in communications with the FTC, such communications are likely to be highly sensitive and the disclosure of the communications, or even the fact that EY is communicating with the FTC in connection with a representation, could have serious business implications for those fourth parties. (*See* Reddy Decl. ¶ 15.) Indeed, Twitter itself has conceded before this Court the confidential and commercially sensitive nature of the documents in EY's possession. (*See* Dkt. 2.) EY's other clients and partners have not received notice of Twitter's request and have not been given the opportunity to intervene to protect their interests. Meanwhile,

to the extent Twitter's position is that it is entitled to EY's communications with the FTC concerning fourth parties to discover whether the FTC created "other challenges for EY," this argument for relevance was rejected by *Food Lion*.  Any minimal relevance of the requested documents to the issues in Twitter's Rule 60 Motion is substantially outweighed by the confidentiality interest of fourth parties whose sole connection to this case is that they have employed or are employing the same assurance, consulting, strategy and transactions, and tax firm.

Twitter's case law is irrelevant—each of the cases cited in Twitter's Motion concerns the confidentiality of a **party** to the litigation.  The considerations are different where, as here, the requested information would unduly infringe on the expectations of confidentiality of a nonparty and its third-party clients/customers.  Courts impose broader restrictions on the scope of discovery where, as here, it is sought from a nonparty.  *See, e.g., Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980) (restrictions on discovery are "broader when a nonparty is the target of discovery").[7]

### E.   The Requests Seek Privileged Documents.

Twitter's Requests 2 through 5 are broadly drafted and seek "all" documents or communications relating to communications with the FTC or certain other topics—without any exception for those reflecting the legal advice or mental impressions of EY's counsel.  Twitter does not dispute that it is not entitled to seek documents protected by the attorney client privilege or work product doctrine.  Instead, Twitter complains that EY's "general claims of privilege are

---

[7] Because Twitter issued this Subpoena before seeking leave from the California Court and before engaging in a Rule 26(f) conference, there is no protective order in place in the Underlying Action. Accordingly, at most, this Court should stay enforcement of the Subpoena until the California Court enters a protective order in the Underlying Action. *See, e.g.*, *Viking Yacht Co. v. Composites One LLC*, No. 3:07-MC-00001, 2007 WL 869623, at *3  (E.D. Tenn. Mar. 21, 2007) (directing parties to enter into a protective order to protect any confidential or proprietary commercial information that is produced pursuant to subpoena).

inadequate" and that EY is obligated to respond to Twitter's overbroad requests with a privilege log.  (Mot. at 20.)  Twitter's position is, again, unsupported.

First, EY did not rely solely on general claims of privilege.  In objections to Requests 2, 3, 4 and 5, EY specifically objected to the overbroad wording of the Requests without any exception for documents and communications "reflecting the legal advice, mental impressions, conclusions, opinions, or legal theories of EY's counsel."  (*See* Dkt. 1-19 at pp. 7-11.)  Additionally, EY's objection to Request No. 3—which Twitter also decries as being "general"—contains a thorough explanation of EY's privilege and specifies why the requested documents are subject to work-product protection, providing ample "means for the Court [and] opposing counsel to evaluate whether the materials sought were, in fact, subject to the enumerated privileges."  *Klayman v. Judicial Watch, Inc.*, No. 06-670, 2008 WL 11394169, at *3 (D.D.C. Mar. 12, 2008).  EY's objections are specific and tailored to Twitter's assertion at a July 28, 2023 meet and confer in which Twitter asserted that Request No. 3 was intended to encompass memoranda and notes drafted by EY's counsel relating to communications with the FTC.  (Dkt. 1-17 at p. 3; VanDruff Decl. ¶ 10.)  As explained in EY's objection to Request 3, "[a]ttorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant."  *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (holding that "notes and memoranda of an attorney" are protected work product).  Put differently, "in deciding what to include and what to omit, the lawyer reveals their view of the case."  *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997).  EY's objections on the basis of privilege were sufficiently detailed.

Second, Twitter misplaces its reliance on *Klayman* for the contention that EY is obligated to create a privilege log in response to Twitter's overbroad requests for documents.  *Klayman* did

not concern a subpoena or the privilege interests of a nonparty; rather, it involved direct discovery from the plaintiff to the action.  2008 WL 11394169, at *3.  When considering privilege concerns of non-parties, the expense incurred in reviewing all of the potentially responsive document for privilege, redacting any privileged information, and preparing a log "tips the scales in favor of establishing that the Subpoena constitutes an undue burden."  *Ctr. For Study*, 2023 WL 2467738, at *4; *accord Dell,* 233 F. Supp. 3d at 4 (subpoena presented an undue burden when it required a nonparty to review thousands of documents, "most of which would be protected by the attorney-client privilege or attorney work-product doctrine," and prepare a privilege log).  Indeed, a court in this District recently quashed a subpoena request where "many of the responsive documents [] likely contain privileged attorney-client communications and/or attorney work product."  *Ctr. for Study*, 2023 WL 2467738, at *4.  Here, such a review would provide an immense burden, particularly in light of how overbroad the Requests are in scope and are not legally authorized in the first instance.  (*Supra* pp. 14-21.)  A preliminary review of the documents revealed tens of thousands of potentially responsive documents each of which has to be examined for privilege, (Reddy Decl. ¶¶ 7-14, 17-20), and according to Twitter, EY should further bear the cost of analyzing and redacting these documents line-by-line.  That is neither reasonable, nor the outcome that the law of this Circuit requires.

### F.     Twitter Should Pay EY's Costs Associated with the Subpoena.

Rule 45(d)(1) mandates that "[a] party or attorney responsible for issuing and serving a subpoena ***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required ***must*** enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."  Fed. R. Civ. P. 45(d)(1) (emphasis added).  Twitter failed in this duty in three key ways: (1) knowingly serving a subpoena

without any legal basis; (2) leap-frogging the California Court by not waiting for its ruling on whether to reopen discovery in connection with its Rule 60 Motion; and (3) seeking documents from EY, a nonparty, that are equally available from a party to the Underlying Action.  Twitter's blatant disregard of the protections set forth in Rule 45 merits an award of sanctions under that Rule.  *See, e.g.*, *Med. Components, Inc.*, 210 F.R.D. at 179 (ordering that movant pay respondent's attorneys' fees for time expended in opposing the motion to compel). Thus, EY requests an award of fees and costs in connection with defending this Motion.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, EY respectfully requests the Court deny Twitter's Motion, or alternatively stay a decision on the Motion pending a ruling from the California Court on whether to grant Twitter leave to take additional discovery.

DATED: September 8, 2023   Respectfully submitted,

By: */s/ Laura Riposo VanDruff*
   Laura Riposo VanDruff (DC Bar No. 481785;
   admitted *pro hac vice*)
   David H. Evans (DC Bar No. 455757)
   KELLEY DRYE & WARREN LLP
   Washington Harbour
   3050 K Street NW, Suite 400
   Washington, DC 20007
   Tel.: (202) 342-8400
   Fax: (202) 342-8481
   Lvandruff@kelleydrye.com
   Devans@kelleydrye.com

   Rebecca B. Durrant (admitted *pro hac vice*)
   KELLEY DRYE & WARREN LLP
   888 Prospect Street, Suite 200
   La Jolla, CA 92037
   Tel.: (212) 808-7551
   Fax: (212) 808-7897
   Rdurrant@kelleydrye.com

   *Attorneys for Nonparty Ernst & Young LLP*